UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-24799-ALTMAN

MICHELLE MAUPIN,

 *Plaintiff,*

*v.*

TROY HOWARD, *et al.,*

 *Defendants.*

_____/

### ORDER

 A teacher sued her colleagues, a school board, and a school-board employee, alleging federal and state-law claims. The Defendants now move to dismiss all six counts. After careful review, we **GRANT** the motions to dismiss.

### THE FACTS

 Our Plaintiff—Michele Maupin—"is an African American female educator residing" in "West Park, Florida." Amended Complaint (the "AC") [ECF No. 19] ¶ 4. She claims that, on "June 6, 2022," she "formally requested that School Board administrators . . . investigate . . . discriminatory and retaliatory conduct" on the part of Pierre Edouard, "the "Principal of Young Men's Preparatory Academy" ("YMPA"). *Id.* ¶¶ 5, 9.[1] According to the AC, "[t]he School Board ignored [that] complaint and failed to investigate." *Id.* ¶ 11. In August 2022, the AC continues, "Edouard's friend, Troy Howard, also a teacher at [YMPA], filed a frivolous" state-court suit "for Slander Per Se" against the

---

[1] The AC itself neglects to explain that the Plaintiff taught at YMPA. But we can deduce that fact from an exhibit that's appended to the AC. *See* Exhibit B [ECF No. 19] at 1 ("Michelle Maupin . . . was a teacher at the Academy."); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) (Marcus, J.) ("Under the Federal Rules of Civil Procedure, these exhibits are part of the pleading 'for all purposes.'" (quoting Fed. R. Civ. P. 10(c))).

Plaintiff. *Id.* ¶ 12. "In December 2023," the Plaintiff tells us, Howard "submitted a sworn declaration in the state court defamation action," declaring (among other things) "that the Plaintiff accused him of having sexual contact with a student at YMPA," of "having a homosexual relationship with Edouard," and of "holding back students academically." *Id.* ¶¶ 16, 18, 20, 22. That same month, the Plaintiff adds, "Edouard, while serving as principal of a public school, drafted and submitted a sworn declaration in Howard's lawsuit" that "expressly identified him as Principal" of YMPA and "contained fabricated statements about Plaintiff." *Id.* ¶¶ 26–28; *see also id.* ¶ 36 ("Edouard's declaration adopted and amplified allegations against Plaintiff that had already been investigated and found unsupported by the District's Office of Civil Rights Compliance.").

In October 2025, the Plaintiff—proceeding *pro se*—sued Howard, Edouard, and the School Board of Miami-Dade County, Florida (the "Board"). *See* Complaint [ECF No. 1]. In February 2026, the Plaintiff filed the operative AC, adding a fourth Defendant—Maria Rojas, "the current chairperson of the . . . Board." AC ¶ 8. The AC brings six counts. Count I asserts a claim under 42 U.S.C. § 1983, alleging that "Edouard's conduct deprived Plaintiff of procedural due process, equal protection, and meaningful access to the courts in violation of the Fourteenth Amendment, and simultaneously violated the . . . Board's Conflict of Interest Policy[.]" *Id.* ¶ 47. Count II advances a claim under 42 U.S.C. § 1985(2), alleging that "Edouard conspired with Troy Howard to obstruct justice by creating and using falsified declarations to influence a state court and harm the Plaintiff, with the intent to deny the Plaintiff equal protection and discourage her from exercising her legal rights." *Id.* ¶ 50. Count III brings a claim under 42 U.S.C. § 2000e-3(a), alleging that the "Board retaliated against Plaintiff by failing to investigate, permitting ongoing harassment, and tolerating false and defamatory statements, thereby creating a hostile and retaliatory work environment." *Id.* ¶ 55. Count IV asserts a Title VII claim under 42 U.S.C. § 2000e-2(a), alleging racial and gender discrimination. Count V alleges that "Edouard's misuse of fabricated evidence to advance a frivolous lawsuit constitutes abuse of process

under Florida law." *Id.* ¶ 62. And, finally, Count VI alleges "negligent supervision and retention," claiming that the "Board's inaction permitted continued misconduct, including Howard's and Edouard's submission of a falsified declaration for use in a judicial proceeding[.]" *Id.* ¶ 65 (cleaned up).

In February 2026, Edouard and Howard filed a Motion to Dismiss ("MTD I") [ECF No. 23]. The Plaintiff opposed that motion, *see* Response in Opposition to MTD I [ECF No. 24], and Edouard and Howard filed a reply brief, *see* Reply in Support of MTD I [ECF No. 25]. Separately, in May 2026, Rojas and the Board filed their own Motion to Dismiss [ECF No. 31]. The Plaintiff opposed that motion, *see* Response in Opposition to MTD II [ECF No. 32], though Rojas and the Board never submitted a reply.

## THE LAW

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

## ANALYSIS

Edouard, Howard, Rojas, and the Board (collectively, the "Defendants") file two separate motions. Edouard and Howard address only Counts I, II, and V. Rojas and the Board address only Counts III, IV, and VI. We'll analyze each motion in turn.

## I.       The MTD I

The first motion contends that the Plaintiff "fails to bring forward any claim upon which relief may be granted against Edouard or Howard[.]" MTD I at 11. We agree.

We'll start with Count I, which attempts to state a claim under § 1983. Incorporating "paragraphs 26–38," Count I alleges that, "[a]cting under color of state law, Edouard abused authority conferred by the State by submitting a sworn declaration invoking his official position to retaliate against Plaintiff and interfere with judicial proceedings." AC ¶¶ 45–46. As the Plaintiff sees it, this conduct "deprived Plaintiff of procedural due process, equal protection, and meaningful access to the courts in violation of the Fourteenth Amendment," "violated the . . . Board's Conflict of Interest Policy prohibiting misuse of public opposition and disproportionate benefit," and "constitutes an intentional misuse of public authority with a retaliatory motive and caused Plaintiff harm." *Id.* ¶¶ 47–48.

"To state a claim under § 1983, a plaintiff must allege that a person acting under the color of state law deprived him of a right secured under the United States Constitution or federal law." *Hernandez v. Echarte*, 2024 WL 2115436, at *2 (S.D. Fla. Apr. 5, 2024) (Altman, J.) (quotation marks omitted). So, even assuming that the Plaintiff does enough to allege that Edouard acted "under the color of state law," Count I doesn't adequately allege that Edouard "deprived" her of any right. To be sure, Count I alleges that the Plaintiff suffered "harm" and was "deprived" of "procedural due process, equal protection, and meaningful access to the courts in violation of the Fourteenth Amendment." *Id.* ¶ 47. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Without a generic laundry list of supposed Fourteenth Amendment claims, our Plaintiff offers no facts alleging that the submission of the declaration deprived her of a right protected by § 1983. Indeed, Count I says *nothing* whatsoever about

4

the so-called "harm" the Plaintiff sustained. We therefore find that Count I fails to state a viable claim for relief.

Count II attempts to bring a claim under § 1985(2), which prohibits conspiring to deter "any party or witness in any court of the United States" from attending or testifying in court. As the Plaintiff sees it, "Edouard conspired with Troy Howard to obstruct justice by creating and using falsified declarations to influence a *state court*." AC ¶ 50. But "Section 1985(2) applies only if the conspiracy attempted to prevent a witness from attending or testifying in *federal court*." *Coker v. Warren*, 2025 WL 1575578, at *6 (11th Cir. June 4, 2025) (emphasis added); *see also Barati v. Fla. Att'y Gen.*, 2021 WL 2911729, at *5 (11th Cir. July 12, 2021) ("A state court is not a 'court of the United States' within the meaning of this provision."). Count II thus fails to state a viable claim under § 1985(2).

Finally, Count V advances an abuse-of-process claim. *See* AC ¶¶ 60–62. It encompasses only three sentences. The first "incorporates paragraphs 12–28; 35–38[;] and 40." *Id.* ¶ 60. The next two allege that "Edouard knowingly authored and submitted false statements in his declaration to mislead the court and destroy the Plaintiff's reputation, constituting defamation per se," and that this "misuse of fabricated evidence to advance a frivolous lawsuit constitutes abuse of process under Florida." *Id.* ¶¶ 61–62.

"To state a claim for abuse of process under Florida law, a plaintiff must allege three elements: (1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." *White v. Lemma*, 947 F.3d 1373, 1380 (11th Cir. 2020) (quotation marks omitted). "Consequently, whether a plaintiff can prevail on an abuse of process claim turns on sufficient proof that the defendant misused process after it was served so as to exert some form of leverage over the plaintiff." *Steinmetz v. Pickholtz*, 414 So. 3d 309, 315 (Fla. Dist. Ct. App. 2025) (cleaned up). To that end, "[t]he usual abuse of process

claim involves some form of extortion—using a criminal prosecution to force payment of a civil debt." *Verdon v. Song*, 251 So. 3d 256, 258 (Fla. Dist. Ct. App. 2018) (quotation marks omitted).

Our Plaintiff appears to allege that Edouard used "fabricated evidence" for two purposes—"to mislead the court and destroy the Plaintiff's reputation." AC ¶ 61. Neither purpose seems aimed "to exert some form of leverage" over the Plaintiff, *Steinmetz*, 414 So. 3d at 315, and the Plaintiff says nothing else to suggest that Edouard intended to extract any such leverage, *cf. ibid.* ("Alleging malicious intent and pre-process events are not enough to state a claim for abuse of process."). Accordingly, Count V too fails to state a claim for relief.

## II.      The MTD II

That leaves Counts III, IV, and VI. Rojas and the Board argue that "Counts III and VI should be dismissed as impermissible 'shotgun' pleadings" and that "Count IV must be dismissed because [it] alleges no adverse employment action[.]" MTD II at 9. Again, we agree.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Such pleadings "fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. And that's typically for (at least) one of four reasons: the complaint contains "multiple counts where each count adopts the allegations of all preceding counts"; is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; fails to "separat[e] into a different count each cause of action or claim for relief"; *and/or* asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Ibid.*

Counts III and VI suffer from these failings. Count III—titled "Title VII Retaliation and Hostile Work Environment"—combines a Title VII retaliation claim with a Title VII hostile-environment claim. *See* AC ¶¶ 53–59. And Count VI—titled "Negligent Supervision and Retention"—

merges a negligent-supervision and a negligent-retention claim into one. *See id.* ¶¶ 63–65. Those counts thus fail to state a viable cause of action. *See ADT LLC v. Skyline Sec. Mgmt., Inc.*, 2026 WL 575122, at *26 (S.D. Fla. Mar. 2, 2026) (Altman, J.) ("[D]iscrete claims must be pled separately, not nestled within a general . . . claim." (cleaned up)); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980 (11th Cir. 2008) (explaining that a "shotgun pleading" contains "untold causes of action, all bunched together in one count contrary to the requirements of Federal Rule[ ] of Civil Procedure 10(b)").

Count IV fares no better. It purports to advance a claim of racial and gender discrimination under Title VII and includes only four sentences. The first incorporates "paragraphs 9–44." AC ¶ 56. And the next three tell us that the Plaintiff, "an African-American woman, was subjected to discriminatory stereotyping and disparate treatment by her supervisors and colleagues"; that "[e]ach time the Plaintiff defended herself against false allegations, administrators and colleagues invoked the racist and sexist stereotype of the 'angry Black woman,' portraying her as unprofessional and combative to discredit her"; and that, "[d]espite actual notice, the School Board failed to intervene, in violation of 42 U.S.C. § 2000e-2(a)." *Id.* ¶¶ 57–59. That's not enough.

To be sure, "[t]he Supreme Court has held that an employment discrimination plaintiff need not plead specific facts establishing a prima facie case under the burden-shifting framework established in *McDonnell Douglas*." *Horace v. ARIA*, 2024 WL 1174398, at *4 (11th Cir. Mar. 19, 2024). But "a Title VII plaintiff, like any other plaintiff, must still satisfy the plausibility standard," which demands providing "enough factual allegations that, taken as true, plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination." *Ibid.* (quotation marks omitted). Our Plaintiff never alleges that she suffered an adverse employment action. She doesn't tell us that she was fired or demoted, that her pay was docked, that her leave was cut short, that she was given lesser work responsibilities, or that she suffered any other action that might plausibly qualify as adverse under our precedents. She's thus failed to state a discrimination claim.

\* \* \*

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). "However, the leniency afforded *pro se* litigants does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Nails v. Alabama*, 2024 WL 4662977, at \*1 (11th Cir. Nov. 4, 2024) (quotation marks omitted). Here, all six counts of the AC suffer from pleading deficiencies that we cannot overlook.

"[F]iling a motion is the proper method to request leave to amend a complaint." *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (cleaned up). Our Plaintiff hasn't done so, but we "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). So, we'll give our Plaintiff one more chance to amend her Complaint to plead additional facts that might avoid the obstacles we've highlighted above.

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The MTD I [ECF No. 23] and the MTD II [ECF No. 31] are **GRANTED** without prejudice.

2. The Plaintiff shall file an amended complaint by **June 26, 2026**.

3. All hearings and deadlines are **TERMINATED**, and any pending motions are **DENIED as MOOT**.

4. The Clerk of Court shall **CLOSE** the case.

**DONE AND ORDERED** in the Southern District of Florida on June 12, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

8